UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAMILLE A. SNODDY,                         Case No. 17-11161

          Plaintiff,                      Denise Page Hood
    v.                                     Chief United States District Judge

COMMISSIONER OF SOCIAL                      Stephanie Dawkins Davis
SECURITY,                                   United States Magistrate Judge

         Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 16, 18)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On April 13, 2017, plaintiff Camille A. Snoddy filed the instant suit.  (Dkt.

1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), Chief District

Judge Denise Page Hood referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision that plaintiff's disability

ended as of September 4, 2012.  (Dkt. 4).  This matter is before the Court on cross-

motions for summary judgment.  (Dkt. 16, 18).

### B.   Administrative Proceedings

On January 12, 2005, plaintiff was found disabled as of October 9, 2004 and

entitled to benefits based on chronic renal failure.  (Dkt. 16, at p. 4).  On

September 4, 2012, the Social Security Administration determined that plaintiff's disability had ended.  (Tr. 99-100).[1]  Plaintiff requested reconsideration (Tr. 131), which was denied on April 13, 2014.  (Tr. 146-53).  Plaintiff then requested and was granted a hearing before Administrative Law Judge ("ALJ") B. Lloyd Blair. (Tr. 39-56).  In a decision dated August 15, 2014, the ALJ found that plaintiff's disability ended as of September 4, 2012.  (Tr. 114).  Plaintiff requested a review of this decision.  (Tr. 198-200).  On December 21, 2015, the Appeals Council remanded the case to the ALJ for further proceedings.  (Tr. 123-25).

On remand, ALJ Blair held another hearing on March 31, 2016.  (Tr. 57-85). In a decision dated April 20, 2016, the ALJ found that plaintiff's disability ended as of September 4, 2012, and that she is not disabled.  (Tr. 15-38).  Plaintiff requested a review of this decision.  (Tr. 7-11).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on February 15, 2017, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

---

[1] The Administrative Record appears on the docket at entry number 12.  All references to the same are identified as "Tr."

for summary judgment be **DENIED**, and that the case be remanded to the Commissioner for further proceedings.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff, born December 2, 1969, was 34 years old on the alleged disability onset date.  (Tr. 29).  She has no past relevant work, but from 1998 to 2005 she worked as an insurance claims adjuster and later worked part-time at HomeGoods. (Tr. 62-63).  She also has a high school diploma and completed four years of college.  (Tr. 483).  She received a kidney transplant in 2007, and after an administrative reevaluation of her disability, she was determined to have improved to such a degree that she was no longer deemed disabled in September of 2012.

In view of plaintiff's prior-determined disability, the ALJ undertook to "determine if there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work."  20 C.F.R. § 416.994(b).  The ALJ ascertains medical improvement by utilizing an eight-step sequential evaluation that largely mirrors the traditional five-step sequential disability evaluation.  20 C.F.R. § 416.994(b)(5)(i)-(viii); 20 C.F.R. § 404.1594(f)(1-8).  At the outset, the ALJ determined that the "comparison point date" is January 12, 2005, the date of the most recent favorable medical decision finding plaintiff disabled.  (Tr. 20).  At step

one, the ALJ determined that plaintiff has not engaged in substantial gainful

activity since September 4, 2012.  (Tr. 20).  At step two, the ALJ determined that

since September 4, 2012, plaintiff did not have an impairment or combination of

impairments that met or medically equaled a Listing.  (Tr. 21).  At step three, the

ALJ found that medical improvement had occurred as of September 4, 2012.  (Tr.

22).  The ALJ determined that plaintiff's status-post kidney transplant with pain;

degenerative disc disease of the lumbar spine; esophageal dysphagia; right facial

trigeminal neuralgia; carpal tunnel syndrome (CTS); and depression were severe.

(Tr. 20).  Thereafter, the ALJ assessed plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in 20
> CFR 404.1567(b), but with the following additional
> limitations: stand and walk two hours per eight-hour
> workday; sit for six hours per eight-hour workday; never
> use ladders, scaffolds, or ropes; avoid concentrated
> exposure to extreme heat, extreme cold, vibrations,
> fumes, odors, gases, and respiratory irritants; never use
> pneumatic, torque, or power tools; occasionally bend,
> twist, and turn at the waist; no commercial driving; and
> requires use of a cane to ambulate to and from the work
> station.

(Tr. 22-23).

4

The ALJ denied plaintiff benefits because he found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 29).

B.     Plaintiff's Claims of Error

Plaintiff's arguments challenge the ALJ's treatment of the medical evidence and the RFC as it relates to her mental impairments.  Plaintiff argues that the ALJ's weight assignments to the various consulting physicians and other medical evidence is not supported by substantial evidence.  According to plaintiff, the ALJ gave great weight to consultative examiner Dr. Abel's opinion, but Dr. Abel did not render an opinion.  (Dkt. 16, at p. 16).  The ALJ then gave consultative examiner Dr. Anderson's opinion little weight because Dr. Anderson examined plaintiff only once, just like Dr. Abel.  Further, the ALJ gave great weight to two non-examining consulting physicians.  Plaintiff contends that these weight distributions, based in part on the length of examination, are inconsistent and not supported by substantial evidence.  Moreover, Dr. Anderson's limitations on sitting, walking, and lifting are consistent with physician's assistant Perkins' opinion, yet these limitations were not included in the RFC.  (*Id.* at p. 17).

Plaintiff notes that the only opinions which support the RFC come from non-examining consultants Drs. Holmes and Gupta.  However, their opinions were rendered in 2012, and thus lacked a substantial amount of evidence included in the

record through 2016.  According to plaintiff, the Sixth Circuit requires the ALJ to acknowledge the fact that the opinions were without the benefit of a complete record before giving greater weight to the opinions.  (*Id.* at pp. 17-18, citing *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016)).  There was no such indication here.

Plaintiff also finds error in the ALJ's treatment of her use of a cane. Physician's Assistant Perkins suggested that plaintiff required the use of a cane, and plaintiff stated she needed a cane both for standing and walking.  (*Id.* at p. 18). Although the ALJ adopted a need for a cane, the ALJ deemed it sufficient for use ambulating between workstations.  This limited use of the cane, according to plaintiff, is not supported by the record.

Plaintiff next argues that the ALJ erroneously considered her work history during her period of continuing disability as evidence against her credibility.  (*Id.* at p. 19).  Pursuant to 20 C.F.R. § 404.1594(i)(2), where a claimant has been receiving disability insurance benefits for at least 24 months before a determination is made on her case, "we will not consider the activities you perform in the work you are doing or have done during your current period of entitlement based on disability if they support a finding that your disability has ended."  Therefore, the ALJ erred here.

Lastly, plaintiff argues that the ALJ's RFC assessment failed to account for the effects of her mental impairment.  The ALJ considered plaintiff's depression to be a severe impairment, and stated that plaintiff had moderate difficulties in concentration, persistence, or pace.  (*Id.* at p. 20).  However, the RFC does not include any mental restrictions.  Psychiatric consultative examiner Dr. Imasa found significant limitations in plaintiff's mental functionality, including moderate limitations in her ability to follow instructions or make work-related judgments, and marked limitations in plaintiff's ability to interact with others or respond appropriately to work situations or routine changes.  (*Id.* at p. 20-21, citing Tr. 850).  These limitations were not included in the RFC.  The ALJ gave little weight to Dr. Imasa's opinion because it was based on plaintiff's self-report of her symptoms.  As plaintiff points out, however, mental impairments do not lend themselves to the same degree of substantiation as other medical impairments.  (*Id.* at p. 21, citing *Walker v. Sec'y of HHS* , 980 F.2d 1066, 1071, n. 3 (6th Cir. 1992)).

C.    Commissioner's Motion for Summary Judgment

The Commissioner's argument is that the RFC is supported by substantial evidence.  In particular, the Commissioner argues that the ALJ's partial reliance on Drs. Holmes and Gupta's opinions was proper in light of Sixth Circuit precedent establishing that an ALJ may give greater weight to the opinion of such a state agency reviewing expert than to even the opinion of a treating source where the

former is "supported by evidence in the case record." (Dkt. 18, at p. 6). According to the Commissioner, record evidence supports the opinions. (*Id.*, citing Tr. 507, 509, 601, 604, 606). The Commissioner finds plaintiff's contention that the ALJ failed to account for the fact that Drs. Holmes and Gupta did not review the entire record meritless because the ALJ gave some indication that he considered that the source did not review the entire record. (*Id.* at p. 7). The Commissioner maintains that the ALJ expressly considered the consistency of the opinions with the rest of the record and expressly noted the dates of those opinions and of other evidence. (*Id.* at p. 8).

Regarding the little weight given to Dr. Anderson's opinion, the Commissioner points out that the ALJ gave many reasons for the weight assignment, one of which was that Dr. Anderson only examined plaintiff once. (*Id.* at p. 9). Further, according to *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875-76 (6th Cir. 2007) and *Kornecky v. Comm'r of Social Security*, 167 Fed. Appx. 496, 505-08 (6th Cir. 2006), the ALJ need not give good reasons for discounting the opinion of a non-treating source. The Commissioner further contends that plaintiff is improperly inviting the court to re-weigh the evidence. (*Id.* at p. 10).

The Commissioner next argues that the ALJ's determination that plaintiff does not need a cane to walk and to stand is supported by the evidence. Dr. Anderson opined that plaintiff did not need a cane in 2016, and the ALJ gave Ms.

8

Perkins' opinion little weight because, as a physician's assistant, Perkins is not an acceptable medical source. (*Id.* at p. 12). Moreover, any error in the ALJ's determination of plaintiff's cane use is harmless because the VE testified that the ticket taker job can be done while seated. (*Id.* at p. 13, citing Tr. 78-79).

Regarding plaintiff's argument that the ALJ erred in relying on the evidence of her work during her continuing disability, the Commissioner argues that the error, if any, does not require remand. (*Id.* at p. 15). The ALJ gave numerous reasons in support of the conclusion that plaintiff's statements are not entirely credible, one reason was that plaintiff worked 30 hours per week as of April 2011. Even though the ALJ gave one improper reason, because the ALJ gave numerous other proper reasons the error does not warrant remand. (*Id.*, citing *Ulman v. Comm'r of Social Security*, 693 F.3d 709, 714 (6th Cir. 2012)).

Finally, the Commissioner argues that there is no cause for remand regarding the ALJ's treatment of plaintiff's mental impairment. The Commissioner concedes that since the ALJ found plaintiff to have moderate limitation in concentration, persistence, or pace, the ALJ "arguably" should have assessed some mental RFC limitation to account for the limitation. (*Id.* at p. 17). However, the Commissioner asserts that the error is harmless because plaintiff is able to perform the ticket taker job. This job has a Specific Vocational Preparation level of 2, which means that it is "unskilled work." (*Id.* at p. 18). Unskilled work

9

needs little or no judgment to do simple duties that can be learned in a short period of time.  (*Id.* citing 20 C.F.R. § 404.1568(a)).  This job, according to the Commissioner, satisfies the Commissioner's Step Five burden.  The Commissioner suggests that plaintiff has not shown that a mental RFC limitation to "simple, unskilled work that requires little or no judgment" is insufficient limitation to account for the ALJ's assessment of a moderate deficit in concentration, persistence, or pace at Step Three.  A job which limits the claimant to simple, routine, or repetitive work is not automatically insufficient to account for moderate limitation in concentration, persistence, or pace.  (*Id.* at p. 18, citing *Morgan v. Comm'r of Soc. Sec.*, 2013 WL 5913383, at *9 (E.D. Mich. Oct. 31, 2013)).

> D.   Plaintiff's Reply

In reply, plaintiff largely reiterates the arguments made in her initial brief. Regarding plaintiff's use of a cane, plaintiff suggests that it is not clear that, even if plaintiff could be seated while working a ticket taker position, that there are a sufficient number of ticket taker jobs in the national economy.  Plaintiff points to the vocational expert's testimony wherein the expert states she does not have a national number for the position, but stated that it is approximately 15,000.  (*Id.* at p. 4, Tr. 78-79).  Thus, plaintiff submits that the expert was merely speculating as to the number of jobs in the national economy.

As to her mental impairments, plaintiff urges the Court to reject the Commissioner's *post hoc* argument that plaintiff could perform the unskilled ticket taker job because it is simple and routine.  (*Id.* at p. 7).  Further, plaintiff contends that it is not certain that a limitation to simple, unskilled work would sufficiently account for a moderate deficit in attention and concentration.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.   <u>Governing Law</u>

When, as here, a recipient of disability benefits challenges the cessation of

benefits, the central issue is whether the recipient's medical impairments have

improved to the point where she is able to perform substantial gainful activity.  42

U.S.C. § 423(f)(1); *Kennedy v. Astrue,* 247 F. App'x 761, 764 (6th Cir.2007).

Whether an individual's entitlement to benefits continues depends on whether

"there has been any medical improvement in [the individual's] impairment(s) and,

if so, whether this medical improvement is related to [the individual's] ability to

work."  20 C.F.R. §§ 404.1594(b), 416.994(b).

The cessation evaluation process is a two-part process.  *See Kennedy,* 247 F.

App'x 764–65.  The first part of the process focuses on medical improvement.

*Id.* at 764.  The implementing regulations define "medical improvement" as "any

decrease in the medical severity of [the individual's] impairment(s) which was

present at the time of the most recent favorable medical decision that [the

individual was] disabled or continued to be disabled."  *Id.* at 764–65 (citing 20

C.F.R. § 404.1594(b)(1)).  "A determination that there has been a decrease in

medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the individual's] impairment(s).... 20 C.F.R. §§ 404.1594(b)(1)(i), 416.994(b) (l)(i).  If there has been a decrease in the severity of the impairments since the favorable decision, the medical improvement is related to the individual's ability to work only if there has been a corresponding 'increase in [the claimant's] functional capacity to do basic work activities....'" *Kennedy,* 247 F. App'x at 765 (quoting 20 C.F.R. § 404.1594(b)(3)).  *See also Nierzwick v. Commissioner of Social Security,* 7 F. App'x 358, 361 (6th Cir.2001).

The second part of the cessation analysis focuses on whether the individual has the ability to engage in substantial gainful activity.  *Kennedy,* 247 F. App'x at 765.  The implementing regulations for this part of the evaluation incorporate many of the standards set forth in the regulations that govern initial disability determinations.  *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f) (7)).  The difference is that "the ultimate burden of proof lies with the Commissioner in termination proceedings."  *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7); *Griego v. Sullivan,* 940 F.2d 942, 944 (5th Cir.1991)).  An increase in the claimant's functional capacity will lead to a cessation of benefits only if, as a result, the claimant can perform her past work or other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1594(f)(7), (8), 416.994(f)(7), (8).

In deciding whether a recipient's entitlement to disability benefits has ended, the Commissioner uses the eight-step sequential evaluation process outlined in 20 C.F.R. §§ 404.1594(f)(l)-(8) and 416.994(f)(l)-(8). *Kennedy,* 247 F. App'x at 764. The steps are:

> (1) Are you engaging in substantial gainful activity?  If you are ... we will find disability to have ended....
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart?  If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section?....
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section....
>
> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply....
>
> (6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe....
>
> (7) If your impairment(s) is severe, ... we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work

you have done in the past.  If you can do such work,
disability will be found to have ended.

(8) If you are not able to do work you have done in the
past, we will consider whether you can do other work
given the residual functional capacity assessment....  If
you can, we will find that your disability has ended.  If
you cannot, we will find that your disability continues.

20 C.F.R. §§ 404.1594(f), 416.994(f).

There is no presumption of continuing disability.  *Kennedy,* 247 F. App'x at

764 (citing *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 286–

287 n. 1 (6th Cir.1994)).  Instead, the Commissioner applies the above procedures

to determine whether the claimant's disability has ended and if she is now able to

work.  *Id.*

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

Plaintiff argues that the ALJ should have including in the RFC a limitation

regarding the ALJ's Step Two finding that plaintiff has moderate limitations in

concentration, persistence, or pace.  Upon review of the ALJ's findings at Step

Two, a significant error in the ALJ's sequential analysis on the issue of medical

equivalence is revealed.[2]  The Court may raise such an obvious and significant

legal error *sua sponte*.  *See e.g.*, *Trainor v. Comm'r of Soc. Sec.*, 2014 WL 988993,

at *23-24 (E.D. Mich. Mar. 13, 2014) (Berg, J.) (citing *Fowler v. Comm'r v.*

*Comm'r of Soc. Sec.*, 2013 WL 537883, at *3 n. 5 (E.D. Mich. Sept. 25, 2013)

(finding no error in magistrate judge *sua sponte* raising the absence of an expert

opinion on equivalence).[3]

The ALJ determined that none of plaintiff's conditions meet or medically

equal Listings 1.00 (Musculoskeletal System), 5.00 (Digestive System), 6.00

(Genitourinary Impairments), and 11.00 (Neurological).  (Tr. 21).  The ALJ

expressly determined that plaintiff's degenerative disc disease did not meet or

medically equal listing 1.04 or 12.04.  The ALJ's determination that plaintiff's

---

[2] Usually, in a disability case the ALJ discusses whether the claimant's impairments meet or medically equal a listed impairment at Step Three.  However, in a "continuing disability" case such as this, the ALJ discusses whether the impairment or combination of impairments meets or medically equals a listing at Step Two.

[3] As explained in *Fowler v. Comm'r of Soc. Sec.*, 2013 WL 5372883, at *3 (E.D. Mich. Sept. 25, 2013), the Sixth Circuit has also previously considered the issue of whether certain impairments meet or equal a listing, even though that issue had not been specifically objected to, and this practice is not uncommon in this District and throughout the Circuit.  *See Gwin v. Comm'r of Soc. Sec.*, 109 Fed. Appx. 102 (6th Cir. 2004); *see also Buhl v. Comm'r of Soc. Sec.*, 2013 WL 878772, at *7 n. 5 (E.D. Mich. 2013) (plaintiff's failure to raise argument did not prevent the Court from identifying error based on its own review of the record and ruling accordingly), *adopted by* 2013 WL 878918 (E.D. Mich. Mar. 8, 2013) (Friedman, J.); *Bucha v. Comm'r of Soc. Sec.*, 2016 WL 5340271*3 n. 3 (W.D. Mich. 2016) ("While the failure to raise an argument often constitutes waiver, the Court will not overlook the ALJ's application of the wrong standard in this case as a matter of law."); *Mian v. Colvin*, 2015 WL 2248750, *14 (E.D. Tenn. 2015) ("[T]he Court may address an issue sua sponte should it find error upon review.").

impairments do not meet a listing is within the ALJ's purview.  However, the ALJ

then went on to conclude that plaintiff's impairments did not medically equal any

Listing, without the benefit of any medical opinion on equivalence and without an

indication that plaintiff's impairments were assessed in combination.  The ALJ did

not conduct any analysis whatsoever on equivalency.

The Commissioner is required to have a medical opinion to support the

equivalency analysis.  *See e.g.*, *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir.

2004) ("Whether a claimant's impairment equals a listing is a medical judgment,

and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R.

§ 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov.

22, 1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 21, 2011) (warning

that an ALJ who makes a step-three equivalence determination without expert

opinion evidence runs the risk of impermissibly playing doctor); *Stratton v. Astrue*,

987 F.Supp.2d 135, 148 (D. N.H. 2012) (SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter.) (citing

*Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic

principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to

determine whether a claimant's ailments meet the Listings, expert assistance is

crucial to an ALJ's determination of whether a claimant's ailments are equivalent

to the Listings.") (citation and quotation marks omitted)).  Indeed, the applicable

regulation requires that an opinion by a medical consultant be considered in

making such an assessment:

> When we determine if your impairment medically equals
> a listing, we consider all evidence in your case record
> about your impairment(s) and its effects on you that is
> relevant to this finding.  We do not consider your
> vocational factors of age, education, and work experience
> (see, for example, § 404.1560(c)(1)).  *We also consider
> the opinion given by one or more medical or
> psychological consultants designated by the
> Commissioner.*  (See § 404.1616.)

20 C.F.R. § 404.1526(c) (emphasis added).  The ALJ did not obtain any opinion

from a medical advisor on equivalency in this case.

Compounding the ALJ's failure to obtain a medical advisor opinion on

equivalence as to plaintiff's severe impairments, is the fact that the ALJ's resulting

approach only partially addresses a critical component of the equivalence analysis,

namely the requirement to assess severe impairments in <u>combination</u>.  If a claimant

has more than one severe impairment (as plaintiff does here), none of which meet a

listing singularly, the Commissioner must determine whether "the combination of

impairments is medically equal to the listed impairment."  20 C.F.R.

§ 404.1526(b)(3).  While the ALJ indicated that plaintiff's impairments singly or in

combination do not meet or medically equal a listing, it does not appear that the

ALJ actually considered all of her severe impairments in combination, beyond the

introductory language preceding the actual discussion.[3]  (Tr. 21).  *See also Wilcox*

*v. Comm'r of Soc. Sec.*, 2014 WL 4109921, *4 (E.D. Mich. 2014) (Duggan, J.)

(The ALJ failed to consider the severity of plaintiff's impairments in combination,

as prescribed by 20 C.F.R. § 416.920(c)); *see also* 42 U.S.C. § 423(d)(2)(B) ("In

determining whether an ... impairment or impairments are of a sufficient medical

severity such that [a finding of disability would be warranted], the Commissioner

... shall consider the combined effect of all of the individual's impairments without

regard to whether any such impairment, if considered separately, would be of such

severity."); *See also Brown v. Comm'r of Soc. Sec.*, 2014 WL 222760, at *13 (E.D.

Mich. Jan. 21, 2014) (The lack of an expert opinion on whether the claimant's

physical impairments (alone or combined with her mental impairments) medically

equal any listed impairment is clear error and requires remand where the record is

not so lacking in medical findings that a finding of equivalence is implausible.)

(Drain, J.)

---

[3] Though also not an opinion on equivalence, the ALJ did note that Dr. Adams' opinion took into consideration the cumulative effects of plaintiff's impairments on a state disability form.  (Tr. 26; Tr. 837-38).  On this form, Dr. Adams listed plaintiff's diagnoses, noted her limitations, and stated that her functional status would improve with surgery.  Nevertheless, the ALJ discounted Dr. Adams' opinion because plaintiff's symptoms would likely improve with surgery.

Likewise, there is no opinion from a medical advisor addressing whether the

plaintiff's impairments in combination equaled a listing.  Nothing in the Disability

Determination and Transmittals (DDT) suggests that plaintiff's impairments were

considered in combination and whether the impairments medically equal a listing.

The expert opinion requirement for equivalency can be satisfied by a signature on

the Disability Determination Transmittal Form.  *Stratton*, 987 F.Supp.2d at 148

(citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required

by SSR 96-6p can take many forms, including "[t]he signature of a State agency

medical ... consultant on an SSA-831-U5 (Disability Determination and

Transmittal Form).")).  In the instant record, there is a Disability Determination

and Transmittal Form signed by a disability examiner as to plaintiff's prior

impairment of renal failure, but there is no such form as to plaintiff's severe mental

impairment of depression or other severe impairments, nor a DDT signed by a

medical examiner.  (Tr. 92, 94).  Dr. Holmes and Dr. Gupta considered Listing

6.02 and determined that plaintiff no longer equals that Listing, and so was no

longer considered disabled.  (Tr. 99, 101).  These physicians, however, did not

consider any other listings.  *See Caine v. Astrue*, 2010 WL 2102826, *8 (W.D.

Wash. 2010) (directing ALJ to obtain expert-opinion evidence on equivalence

where none was in the record and state agency reviewers did not consider the

claimant's medically determinable mental impairment), *adopted by* 2010 WL

2103637 (W.D. Wash. 2010); *Wadsworth v. Astrue*, 2008 WL 2857326, at *7 (S.D. Ind. 2008) (holding that where medical advisor completed only an RFC assessment form which included no space for comment on equivalency, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing").

The failure to obtain a medical opinion on equivalence can amount to harmless error in some cases. However, the instant circumstances do not appear to qualify. *See e.g.*, *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861, at *6 (E.D. Mich. Sept. 26, 2014). As explained in *Bukowski*, "'the harmless error inquiry turns on whether the ALJ would have reached the same conclusions,' had there been a medical opinion on the combination of Bukowski's psychiatric and physical impairments." *Bukowski*, 2014 WL 4823861, at *5. In *Bukowski*, the failure to obtain an opinion on equivalence was deemed harmless "given Plaintiff's failure to adduce evidence that the physical impairments had any effect on her psychiatric impairments and her admission that her psychiatric impairments were the basis for her disability." *Id.* at *6.

Here, unlike the facts in *Bukowski*, plaintiff has not made any such claim. Indeed, in challenging the RFC, plaintiff has pointed to records indicating that limitations from her psychiatric impairment considered along with her physical impairment limitations suggest greater restrictions on her ability to work.

Furthermore, plaintiff's medical records contain a not insubstantial number of objective medical findings concerning her impairments.  For example, Listing 1.04 provides,

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .

20 C.F.R. Pt. 404, Subpt. P, App'x 1.  Here, though the ALJ determined that plaintiff did not meet the listing – a decision wholly within his purview – the medical findings were not so far off that a review of the same in combination with her other impairments would render a finding of equivalence implausible.  Indeed, plaintiff has a number of medical findings implicating the listing, which include, amongst other things:  (1) In August 2012, she had a positive straight-leg raising test in the supine position, decreased sensation in the left leg, and back pain with bilateral hip forward flexion (Tr. 484); (2) a January 2016 MRI revealed herniated disc at L4-L5 with mild bilateral foraminal stenosis and facet hypertrophy with synovial effusions of the facet joints, and a broad-based disc herniation at L5-S1

with probable impingement on both S1 nerve roots with moderate to severe

bilateral foraminal stenosis (Tr. 722); (3) MRI of lumbar spine from June 2014

showed degenerative disc disease at the L4-L5 level with mild to moderate central

disc protrusion and at the L5-S1 level disc denervation with moderate central disc

extrusion with indentation on the thecal sac and mild central canal stenosis (Tr.

624); (4) Also in January 2016, she was unable to perform flexion and extension of

the lumbar spine secondary to pain, there was severe paravertebral muscle spasm

and pain from L3 down to SI joints (Tr. 667); and (5) A physician opined that

plaintiff's L5-S1 degenerative disc disease with chronic back pain and

radiculopathy responded poorly to physical therapy (Tr. 864).

In *Trainor*, 2014 WL 988993, the medical evidence demonstrated some

deficits commensurate with Listing 1.04, such as an MRI demonstrating stenosis

and a finding of limited range of motion in the lumbar spine. *Id.* at *25. The court

also noted, however, that it was not clear whether the plaintiff had "sensory or

reflex loss" or positive straight-leg raising tests in both the sitting and supine

position. Nevertheless, the court concluded that on equivalence analysis,

plaintiff's other impairments were relevant, "and it is the combination of

impairments that should be assessed by a medical expert." *Id.* at *25. Likewise,

here the medical evidence recited above is consistent with Listing 1.04, and

plaintiff's other impairments, including esophageal dysphagia, right facial

trigeminal neuralgia, carpal tunnel syndrome, and depression, are relevant.  It is the combination of impairments that should be assessed by a medical expert.

Additionally, regarding plaintiff's mental impairment, the ALJ found that plaintiff had moderate limitations in concentration, persistence, or pace, although there is no medical opinion in the record regarding equivalence as to Listing 12.04. Nevertheless, the record does contain findings regarding plaintiff's mental impairment.  The medical findings include, amongst other things: (1) That depression and anxiety affect plaintiff's physical condition (Tr. 861); (2) that plaintiff cannot tolerate even "low stress" work (Tr. 863); (3) that plaintiff's attention and concentration would cause her to be off task 25% of the workday (Tr. 863); (4) Plaintiff had marked limitation in her ability to interact with the public, supervisors, or co-workers, and marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting (Tr. 850); (5) in May 2015 plaintiff's depression was uncontrolled despite regularly attending counseling and she reported suicidal ideation (Tr. 641, 772, 779, 845); and (6) a consultative examiner found that plaintiff has difficulty with focus and concentration, and that her depression and physical conditions make it difficult for her to function in a work setting (Tr. 847).

Notwithstanding the ALJ's analysis on meeting the listings, considering the evidence listed above, it cannot be said that the record is so lacking in medical

findings that a finding of equivalence is implausible.  The Court acknowledges that the ALJ discounted the weight of Dr. Imasa's opinion relating to item (6) above, specifically the opinion that plaintiff's depression and physical conditions make it difficult for her to function in a work setting.  (Tr. 26).  However, it is not evident that a trained medical advisor, viewing the record as a whole and along a continuum, while also considering all of plaintiff's impairments in combination would have reached the same conclusion.  The caution in *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) is apt here.  There the Sixth Circuit observed that "courts generally should exercise caution in conducting harmless error review" of a step three finding because harmlessness "may be difficult, or even impossible, to assess." *Id.* at 655-58.  Its pertinence here is that neither the ALJ nor this Court possesses the requisite medical expertise to interpret the significant medical evidence in the record to determine if plaintiff's impairments, in combination, equal any of the applicable listings.  *See also Allor v. Colvin*, 2016 WL 7650798, at *6 (E.D. Mich. Nov. 28, 2016) (Stafford, M.J.), report and recommendation adopted 2017 WL 2350061 (E.D. Mich. May 31, 2017) (Cox, J.). The objective medical findings in this case simply do not lend themselves to neat lay interpretation by the Court; and, in view of the more than minimal number of medical findings and mental assessments, the Court does not deem it a prudent exercise to analyze equivalence in the first instance here.  *See Freeman v. Astrue*,

2012 WL 384838 at *5 (E.D. Wash. Feb 6, 2012) ("Neither the ALJ nor this court

possesses the requisite medical expertise to determine if Plaintiff's impairments

(including pain) in combination equal one of the Commissioner's Listing.");

*Brown v. Comm'r of Soc. Sec.*, 2014 WL 222760, at *15 (E.D. Mich. Jan. 21,

2014) (Drain, J.) (Plaintiff's appreciable medical findings supporting her

impairments, while insufficient to meet a listing, presented sufficient evidence to

suggest that a finding of medical equivalence was at least plausible, thereby

necessitating a medical opinion on the issue).

     In fashioning the RFC without the assistance of a medical opinion on the

equivalence of plaintiff's physical and mental impairments and their combination,

the ALJ carved out several limiting functions based on his own interpretation of

the medical records. For these reasons, the undersigned concludes that this matter

must be remanded so that the ALJ can obtain the opinion of a qualified medical

advisor on the issue of equivalence as to plaintiff's impairments in combination

and for reevaluation of the medical opinions, review of plaintiff's objective

symptoms, and the RFC in light of the new opinion. Updated vocational expert

testimony may also be necessary, based on the conclusions of the medical advisor,

in particular, regarding her degenerative disc disease and any concentration,

persistence, or pace limitations. In light of the foregoing conclusions, the

undersigned declines to address plaintiff's other points of error.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, and that defendant's motion for summary judgment be **DENIED**, and that the case be remanded to the Commissioner for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

29

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 13, 2018                s/Stephanie Dawkins Davis
                                     Stephanie Dawkins Davis
                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 13, 2018, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                     s/Tammy Hallwood
                                     Case Manager
                                     (810) 341-7850
                                     tammy_hallwood@mied.uscourts.gov